## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

NATIONAL FAIR HOUSING
  ALLIANCE, et al.

      Plaintiffs,

         v.                                    Case No. 1:24-cv-21749-DPG

J. ALEX KELLY, in his official
  capacity as Secretary of
  Commerce, et al.,

      Defendants.

_____/

## DEFENDANTS' MOTION TO TRANSFER, OR,
## IN THE ALTERNATIVE, TO STAY PENDING
## RELATED ELEVENTH CIRCUIT APPEAL

Under this Court's local rules, lawyers have "the continuing duty" to notify the Court "of any similar actions or proceedings then pending before another court," S.D. Fla. L. R. 3.8, to prevent "the unnecessary duplication of judicial labor," S.D. Fla. Internal Operating Pro. 2.15.00. One year ago, a similar group of plaintiffs filed a similar lawsuit in the United States District Court for the Northern District of Florida. *See* Complaint, *Shen v. Simpson*, No. 4:23-cv-00208 (N.D. Fla. May 22, 2023). The denial of a preliminary injunction in that case is on appeal at the Eleventh Circuit, which has been fully briefed and argued. *Shen v. Simpson*, No. 23-12737 (11th Cir., argued Apr. 19, 2024). *Shen* involves common state defendants and common

challenges under the Fair Housing Act (FHA) against the same law, Florida's SB 264. Defendants[1] thus move to transfer this case under the first-filed rule and under 28 U.S.C. § 1404(a) to Judge Allen Winsor, who presides over *Shen*.

In the alternative, Defendants move to stay this case until the Eleventh Circuit decides *Shen*. Because *Shen* includes a materially identical Fair Housing Act claim, the Eleventh Circuit's opinion will likely resolve this case or, at the very least, clarify how to proceed with Plaintiffs' claims, thus conserving the parties' as well as the Court's resources.

## BACKGROUND

**1.** Plaintiffs challenge a Florida real property law, SB 264, which was passed in May 2023 alongside two other bills, SB 258 and SB 846. These bills are designed to protect Floridians from certain totalitarian governments labeled "foreign countries of concern," specifically, China, Iran, North Korea, Cuba, Venezuela, Syria, and Russia. Governor Ron DeSantis, *Governor Ron DeSantis Cracks Down on Communist China* (May 8, 2023), https://www.flgov.com/2023/05/08/governor-ron-desantis-cracks-down-on-communist-china; Fla. Stat. § 692.201(3). SB 258 protects the security of data on state-issued devices by barring their access to

---

[1] The term "Defendants" here refers to the Secretary of Commerce and the Chair of the Real Estate Commission. The state-attorney defendants do not oppose this motion.

"applications owned by a foreign principal or foreign countries of concern, including China, which present a cybersecurity and data privacy risk." *Id.* SB 846 likewise protects the Florida College System, including its research institutions, against "higher education subterfuge" by restricting state universities' partnerships with foreign countries of concern and prohibiting the solicitation and acceptance of gifts from them. *Id.* And SB 264 advances similar privacy and security interests by prohibiting Florida agencies from contracting with foreign countries of concern and by "ensur[ing] that health records are physically stored in the continental U.S., U.S. territories, or Canada." *Id.* The parts of SB 264 challenged here advance the State's sovereign interest in protecting its land from being captured by foreign countries of concern and used in ways that would threaten the safety and security of the State. *Id.*

**2.** The provisions of SB 264 at issue created a series of new Florida statutes that addressed "significant gaps" in the ability of Florida and the federal government to prevent harms from certain land purchases. Senate Bill Analysis and Fiscal Impact Statement, CS/CS/SB 264, at 5–6 (2023), https://www.flsenate.gov/Session/Bill/2023/264/Analyses/2023s00264.rc.PDF. SB 264 prohibits certain land acquisitions by "foreign principals" of "foreign countries of concern." Fla. Stat. § 692.203(1). A "foreign principal" includes the foreign government itself, an official of that government, a member of a political party in that country, and—to prevent circumvention—"[a]ny person who is domiciled in" one of the foreign countries of concern "and is

3

not a citizen or lawful permanent resident of the United States." Fla. Stat. § 692.201(4).

Effective July 1, 2023, "foreign principals" are prohibited from acquiring land within 10 miles of a "military installation" or "critical infrastructure facility" or, in the case of a foreign principal of China, anywhere in the State. Fla. Stat. §§ 692.203(1), 692.204(1). But all individuals may continue to own interests in property acquired before July 1. Fla. Stat. §§ 692.203(2), 692.204(3). Those who violate the purchase provisions are subject to civil and criminal penalties. Fla. Stat. §§ 692.203(7)–(9).

The purchase restrictions are qualified by several exceptions. Foreign principals (including those from China) with a non-tourist visa or asylum may acquire up to two contiguous acres of residential property not within five miles of a military installation. Fla. Stat. §§ 692.203(4), 692.204(2). The law also does not apply to land acquired by a foreign principal for a diplomatic purpose recognized, acknowledged, or allowed by the federal government. Fla. Stat. § 692.205. The law further specifies that a foreign principal who "directly or indirectly owns or acquires any interest in real property . . . before July 1, 2023, may continue to own or hold such real property." Fla. Stat. §§ 692.203(2), 692.204(3). In essence, this grandfather provision exempts real-estate contracts closing after July 1, 2023, from the purchase restrictions, if those contracts were executed before that date. Fla. Stat. § 692.203(10);

Fla. Admin. Reg. 73C-60.002, https://www.flrules.org/Gateway/View_notice. asp?id=27574595. Finally, foreign principals who, after July 1, acquire real estate "by devise or descent, through the enforcement of security interests, or through the collection of debts" are given three years to sell or dispose of the property, if that land would otherwise have been subject to SB 264's purchase restrictions. Fla. Stat. §§ 692.203(5), 692.204(5).

As to land, SB 264 imposes two more requirements. First, all land-sale transactions in the State must be accompanied by an affidavit swearing compliance with SB 264 at the time of purchase. Fla. Stat. § 692.203(6). Second, foreign principals who owned property covered by SB 264 prior to the statute's effective date were required to file a one-time registration statement by the end of 2023. Fla. Stat. § 692.203(3). Foreign principals purchasing covered property after that date—such as through the two-acre residential property exception—must register that property within 30 days of acquisition. Fla. Stat. § 692.203(3)(b).

**3.** This is not the first challenge to SB 264. In May 2023, five similar plaintiffs—a real-estate brokerage firm and four individuals—also sued the Florida Commerce Secretary, the Florida Real Estate Commission Chair, and three state attorneys, challenging SB 264 under the FHA. *Shen v. Simpson*, No. 4:23-cv-00208 (N.D. Fla.). Judge Allen Winsor denied the plaintiffs' motion for a preliminary injunction. *See Shen v. Simpson*, 687 F. Supp. 1219, 1251 (N.D. Fla. 2023). The plaintiffs

appealed, and Judge Winsor stayed the remaining deadlines in the case while that appeal was pending, because the outcome of the appeal would greatly affect the remainder of the case. *Shen v. Simpson*, No. 4:23-cv-00208, Doc. 92 (N.D. Fla. Apr. 23, 2024). The *Shen* appeal has been fully briefed and was argued before the Eleventh Circuit on April 19, 2024. *See Shen v. Simpson*, No. 23-12737 (11th Cir.).

The *Shen* plaintiffs claimed that SB 264—through its purchase, affidavit, and registration provisions—violated the FHA because it created a "discriminatory housing practice," defined by reference to certain acts that the FHA makes unlawful. 42 U.S.C. § 3602(f). The plaintiffs alleged that SB 264 was a "discriminatory housing practice" under 42 U.S.C. §§ 3604(a) and 3605 because it "ma[de] unavailable or den[ied]" residential housing based on national origin and race. Principal Brief at 12–23, *Shen v. Simpson*, No 23-12737, 2023 WL 6550361 (11th Cir. Oct. 2, 2023). To substantiate this claim, they argued that SB 264 discriminated both on its face and in its purpose and effect, and that it had a disparate impact. *Id.* For each of these theories, the plaintiffs relied heavily on the assumed correlation between "domicile" and national origin and race. *See id.* Defendants, in response, argued that plaintiffs had provided no evidence that SB 264 discriminated based on national origin or race—whether facially, intentionally, or as a matter of disparate impact. Answer Brief at 28–30, *Shen v. Simpson*, No. 23-12737, 2023 WL 7326551 (11th Cir. Nov. 1, 2023).

**4.** On May 6, 2024, Plaintiffs filed this lawsuit, likewise suing the Florida Secretary of Commerce, the Chair of the Florida Real Estate Commission, and various state attorneys to enjoin SB 264's purchase, affidavit, and registration provisions. Compl. ¶¶ 22–24. Plaintiffs are one real-estate brokerage firm doing business in Florida as well as four nonprofit organizations. Compl. ¶¶ 13–21.

As with the *Shen* plaintiffs, Plaintiffs allege that Florida's law is a "discriminatory housing practice" under the FHA. Compl. ¶¶ 253–74. They claim that SB 264 discriminates by "mak[ing] unavailable or den[ying]" dwellings on the basis of national origin, Compl. ¶¶ 253–59 (citing 42 U.S.C. § 3604(a)), that it "discriminate[s] in the terms, conditions, or privileges of sale or rental of a 'dwelling'" on the basis of national origin, Compl. ¶¶ 261–67 (citing 42 U.S.C. § 3604(b)), that it "indicates a 'preference, limitation, or discrimination'" for dwellings on the basis of national origin, Compl. ¶¶ 268–71 (citing 42 U.S.C. § 3604(c)), and finally that it "'interfere[s]' with 'the exercise or enjoyment of . . . any right granted or protected' by" the FHA, Compl. ¶¶ 272–74 (citing 42 U.S.C. § 3617). As in *Shen*, Plaintiffs say that Florida's law discriminates in three ways: (1) on its face; (2) in its intent and effect; and (3) through a disparate impact. Compl. ¶¶ 257–59. Plaintiffs also claim that SB 264 violates the Florida Constitution's Equality and Right to Property Clauses. Compl. ¶¶ 275–83.

**LEGAL STANDARD**

When a "substantially similar case[]" is already pending in federal court by the time a second suit is filed, the "first-filed" rule applies. *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013). In that situation, "there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (collecting cases for this "well-established" rule). The first-filed rule does not "require that cases be identical," but merely that there is a "substantial overlap" in issues and parties. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). That rule ensures that federal district courts "refrain from interfering with each other's affairs in order to avoid duplication of judicial resources and conflicting decisions." *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998). Once the defendant shows a substantially related action, the burden flips to the plaintiff who may defeat transfer only by "proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135; *see also Elliott v. Williams*, 549 F. Supp. 3d 1333, 1340 (S.D. Fla. 2021).

Even without the first-filed rule, a district court "may transfer any civil action to any other district or division where it might have been brought" if the transfer would be more convenient and otherwise serve the interest of justice. 28 U.S.C. § 1404(a). Under Section 1404(a), courts engage in a two-step test, considering

(1) whether venue would be proper in the other forum, and (2) whether the defendant has carried its burden to show that a transfer is justified. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1277 (S.D. Fla. 2020).

This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That "broad discretion" includes the staying and "'management of pre-trial activities, including discovery and scheduling.'" *Busalacchi v. Wal-Mart Stores, Inc.*, No. 19-cv-80984, 2019 WL 9075964, at *1 (S.D. Fla. Oct. 10, 2019) (quoting *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001)). A stay "is appropriate where the movant shows good cause and reasonableness." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-22691, 2014 WL 12528362, at *1 (S.D. Fla. Dec. 10, 2014). Good cause exists if the prospect of an outstanding motion could be dispositive of the case, *id.*; *cf. Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008), and a stay is reasonable if it would "avoid unnecessary expense for the defendant." *Zamber v. Am. Airlines, Inc.*, No. 16-cv-23901, 2017 WL 5202748, at *3 (S.D. Fla. Feb. 17, 2017).

## ARGUMENT

The Court should transfer this case. The first-filed rule is dispositive, as *Shen* presents the same question as here—whether SB 264 is a "discriminatory housing practice." Moreover, the "convenience of parties and witnesses" and "the interest of

justice" warrant transfer to the Northern District. *See* 28 U.S.C. § 1404(a). In the alternative, the Court should stay until the Eleventh Circuit decides *Shen*.

**I.      This case warrants transfer under the first-filed rule because *Shen* substantially overlaps with this case and no compelling circumstances exist.**

The challenges under the FHA in this case are near carbon copies of those in *Shen*, brought against the same defendants as in *Shen*, and thus "involv[e] overlapping issues and parties." *Manuel*, 430 F.3d at 1135; *see also Elliott*, 549 F. Supp. 3d at 1339. In both cases, plaintiffs assert that Florida's law violates the FHA because it is a "discriminatory housing practice." Compl. ¶¶ 257–71. In both cases, plaintiffs allege that SB 264 discriminates based on "national origin" on its face, through legislative motive, and through a disparate impact on foreign principals. *Compare* Compl. ¶¶ 257–60, 264–66, 269–71, *with* Principal Br. at 12–23, *Shen v. Simpson*, No 23-12737, 2023 WL 6550361 (11th Cir. Oct. 2, 2023). And in both cases, plaintiffs seek overlapping relief—a statewide injunction blocking any use of the law. The first-filed rule thus applies.

While Plaintiffs have alleged additional causes of action under state law, what matters is "substantial overlap," not identity. *See Save Power Ltd.*, 121 F.3d at 950 (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)). For starters, the state-law claims for declaratory and equitable relief under the Florida Constitution are frivolous, *see* Compl. ¶¶ 275–83, because the Eleventh Amendment

bars federal courts from ordering state officials to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

That the Plaintiffs bring "additional claims" under the FHA "does not . . . justify[] divergence from the first-filed rule." *Zampa v. JUUL Labs, Inc.*, No. 18-25005-Civ, 2019 WL 1777730, at *5 (S.D. Fla. Apr. 23, 2019) (quotations omitted). "[D]ifferences in the causes of action and remedies sought" do not "prevent application of the first-filed rule," because "overlapping subject matter is the key; exact identity of claims is not required." *Catanese v. Unilever*, 774 F. Supp. 2d 684, 689 (D.N.J. 2011). And the FHA claims here turn on the same core facts and legal issues as the FHA claim in *Shen*. The "central issue in both" cases is whether SB 264 discriminates based on national origin. *See Troche v. Bimbo Foods Bakeries Distrib., Inc.*, No. 3:11-cv-234, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011); *see also* 42 U.S.C. § 3604(a)–(c). The theories in both cases are the same: that SB 264 discriminates on its face, in its intent and effect, and through a disparate impact. *See* Answer Br. at 28–30, *Shen v. Simpson*, No. 23-12737, 2023 WL 7326551 (11th Cir. Nov. 1, 2023).[2] This case, absent a transfer, will therefore result in wasteful duplication of

---

[2] That different plaintiffs sued in *Shen* also does not affect this analysis, because the same material facts underlie the FHA claim against the Defendants for overlapping relief. *See Save Power*, 121 F.3d at 951 ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action."); *Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 713–14 (7th Cir. 1975) (applying first-filed rule even though different plaintiffs brought the second

judicial resources. And because the plaintiffs in both cases seek a statewide injunction, defendants may even be subjected to conflicting orders.

Lastly, no compelling circumstances defeat the first-filed rule. This is not a case where a first action "was filed in apparent anticipation of the other pending proceeding," *Manuel*, 430 F.3d at 1135, or where "the first-filer engaged in inequitable conduct," "acted in bad faith," "engaged in forum shopping," or where "the later-filed action has developed further than the first-filed action," *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972, 976 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990). The Northern District is more than equipped to handle this case, having grappled with SB 264 for over a year, held hearings, and handed down critical orders on the merits of the same issues.

## II. Even without the first-filed rule, the convenience of the parties and witnesses and the interests of justice warrant transfer.

Under 28 U.S.C. § 1404(a), courts first consider whether the plaintiff could have filed in the proposed forum. *Fruitstone*, 464 F. Supp. 3d at 1277. The Northern District of Florida is a proper venue, given that the Secretary of the Florida Department of Commerce resides, in his official capacity, in the Northern District. *See* 14D

---

action). And while the Plaintiffs here have sued every state attorney in Florida, that is immaterial because in *Shen*, the parties all agreed to a joint stipulation staying the case as to the three state attorney defendants. *See* Stipulation and Joint Mot. of Pls. and Def. State Att'ys for Stay, *Shen v. Simpson*, No 4:23-cv-00208 (N.D. Fla. June 30, 2023), ECF No. 55.

Charles Alan Wright, Arthur R. Miller, & Richard D. Freer, Fed. Prac. & Pro. § 3805
(4th ed.) (government officials sued in their official capacity reside where they per-
form their official duties). The Northern District is also where at least "a substantial
part of the events or omission giving rise to the claim occurred," 28 U.S.C.
§ 1391(b)(2), given that Plaintiffs allege harm throughout Florida.

The remaining question is whether a transfer is justified given "(1) the con-
venience of the witnesses; (2) the location of relevant documents and the relative
ease of access to sources of proof; (3) the convenience of the parties; (4) the locus
of operative facts; (5) the availability of process to compel the attendance of unwill-
ing witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the
governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial
efficiency and the interests of justice, based on the totality of the circumstances."
*Fruitstone*, 464 F. Supp. 3d at 1277 (quotations omitted).

Here, the convenience of "the party and non-party witnesses"—"the single
most important factor"—as well as the convenience of the parties themselves favors
a transfer. *Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D.
Fla. 2013) (quotations omitted). The Florida Department of Commerce and the Flor-
ida Department of Business and Professional Regulation (the parent department of
the Florida Real Estate Commission) are headquartered in the Northern District of
Florida. Location of relevant proof also favors a transfer. As one district court noted

about litigation involving state legislation, "most, if not all, evidence" is in the state capital, because "most of the relevant documents and databases likely are in the possession or control of the State of [Florida], and most of the witnesses likely are State of [Florida] employees, [so] the taxpayers of [Florida] will be forced to bear the costs of transporting state witnesses and documents to the Southern District of [Florida]." *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1295 & n.7 (S.D. Ala. 2007). That all points to Tallahassee.

For similar reasons, the locus of operative facts—"the place where events and actors material to proving liability are"—is the Northern District. *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1165–66 (S.D. Fla. 2017) (quotations omitted). A plaintiff's chosen forum receives far "less consideration" if "the operative facts" occurred outside the plaintiff's forum. *Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1272 (S.D. Fla. 2014) (quotations omitted). As noted above, the principal event giving rise to this case is the passage of SB 264, which occurred in Tallahassee. *See id*. Indeed, Plaintiffs claim that the mere passage of the bill, which happened in Tallahassee, requires them to educate and provide advice and guidance to individuals in Florida. The only specific application of SB 264 referenced in the complaint occurred in Polk County, in the Middle District of Florida. *See* Compl. ¶ 251. At the very least, the Southern District is not the locus of operative facts.

"[T]rial efficiency and the interests of justice" and "familiarity with the governing law" likewise lean heavily toward the Northern District. *Fruitstone*, 464 F. Supp. 3d at 1277 (quotations omitted). Because he has presided over *Shen* for more than a year, Judge Winsor "has familiarity with the [relevant] legal issues and facts." *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 249 (E.D.N.Y. 2012). "[E]ven without the first-to-file rule," the *Shen* action "remain[s] relevant to" the "[Section] 1404 factors," *Elliott*, 549 F. Supp. 3d at 1341, because Judge Winsor can more efficiently resolve these cases, *see Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1353 (S.D. Fla. 2010) (when two cases are "so intricately intertwined," "it would make no sense, as a matter of judicial economy, for these matters to proceed on a piecemeal basis in two different district courts").

Plaintiffs' choice of forum is entitled only to "minimal deference" because, for three of them, the Southern District "is not [their] home forum."[3] *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla.

---

[3] Plaintiffs National Fair Housing Alliance and Asian Real Estate Association of America are national non-profits whose states of incorporation and headquarters are not in Florida. Compl. ¶¶ 13, 18. While King Realty Advisors says it is "licensed in Florida," it does not list its headquarters, *see* Compl. ¶ 21, which according to public records is in Orlando, in the Middle District of Florida, *see* Div. of Corporations, Fla. Dep't of State, *King Realty Advisors LLC*, Sunbiz, https://tinyurl.com/y4vzy2rj (last accessed June 13, 2024).

2007). Their choice receives "little deference" even though two Plaintiffs are based in the Southern District, especially when all Plaintiffs have brought identical equitable claims against Defendants. *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006) (plaintiffs' choice of forum received "little deference" where one of two plaintiffs did not reside in the district); *cf. Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (holding that, in class actions, plaintiff's choice of forum "is greatly discounted" because the "venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs"). And all of the operative facts alleged here occurred outside the forum, further weakening the weight assigned to Plaintiffs' choice. *Game Controller*, 994 F. Supp. 2d at 1272.

As for compelling unwilling witnesses and the relative means of the parties, these factors are a wash. The parties have yet to identify any witnesses who "would be unwilling to testify, either via deposition or at trial." *Orseck*, 699 F. Supp. 2d at 1353. And because Plaintiffs include national and federally funded nonprofits,[4]

---

[4] *See* Compl. at 2, *Housing Opportunities Project for Excellence, Inc. v. Wedgewood*, No. 1:15-cv-21267, 2015 WL 7732679 (S.D. Fla. Apr. 2, 2015) (Plaintiff Housing Opportunities Project for Excellence (HOPE) in a complaint describing themselves as "funded, in part, by the United States Department of Housing and Urban Development"); *see also* Announcement of Funding Awards, 87 Fed. Reg. 21898, 21904 (Apr. 13, 2022) (showing HOPE as a recipient of federal funding in 2022); Announcement of Funding Awards, 88 Fed. Reg. 45458, 45474 (July 17, 2023) (same).

brokerages, and an association of real-estate professionals with almost 20,000 members, any difference in the means of the parties is negligible. Compl. ¶¶ 13–21; *cf. Stokes v. Markel Am. Ins. Co.*, No. 19-20404-CIV, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019) ("As Plaintiff owns a business and several residences, and Defendant is a corporation, both parties appear ably positioned to litigate this case in either forum."); *Evans Design Dynamics, LLC v. Nike, Inc.*, No. 8:12–cv–493, 2012 WL 12906160, at *6 (M.D. Fla. Oct. 22, 2012) (finding this factor of lesser significance where few operative facts occurred in the district and few witnesses or sources of proof are located in the district).

## III.  In the alternative, there is good cause for a stay.

In the alternative, this Court should stay the case pending the Eleventh Circuit's opinion and mandate in *Shen*. This case satisfies both factors for a stay: good cause and reasonableness.

Good cause exists for a stay because the appeal in *Shen* before the Eleventh Circuit presents identical issues about the FHA. *See Pierce*, 2014 WL 12528362, at *1. Because *Shen* is so similar to this case, the Eleventh Circuit's ruling "is likely to have a substantial or controlling effect on the claims" here. *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009). Again, *Shen* also focuses on whether SB 264 violates the FHA by discriminating based on national origin. And both cases present the same theories of discrimination—facial,

intent, and disparate impact. Principal Brief at 12–23, *Shen v. Simpson*, No 23-12737, 2023 WL 6550361 (11th Cir. Oct. 2, 2023); Answer Brief at 28–30, *Shen v. Simpson*, No. 23-12737, 2023 WL 7326551 (11th Cir. Nov. 1, 2023). Any differences in the types of "discriminatory housing practice[s]" will not matter if the Eleventh Circuit holds that SB 264 does not facially, intentionally, or otherwise discriminate based on national origin. That makes *Shen* "at least a good [reason], if not an excellent one," for a stay. *Miccosukee Tribe*, 559 F.3d at 1198.

What is more, a district court may grant a stay "pending the resolution of a related case in another court," *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000), based on respect for fellow courts, *see id.* (discussing abstention), and the need to "avoid a massive waste of judicial and private resources," *Rivas v. The Bank of N.Y. Mellon*, 676 F. App'x 926, 932 (11th Cir. 2017). A stay would serve both purposes. The district court in *Shen* stayed its case pending the Eleventh Circuit appeal, so any further work by this Court could duplicate judicial work already done. If the Eleventh Circuit issued its opinion and narrowed the scope of that case, it would create "duplicative federal litigation," which "'the general principle is to avoid.'" *Miccosukee Tribe*, 559 F.3d at 1196 (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

A stay would thus promote judicial comity, "which requires the federal district courts to refrain from interfering with each other's affairs in order to avoid

duplication of judicial resources and conflicting decisions," *Allstate*, 9 F. Supp. 2d at 1315–16. That stay would not be "immoderate" or "indefinite," *Ortega Trujillo*, 221 F.3d at 1264, as it would be "so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description," *Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936). Here the Eleventh Circuit has already heard oral argument, and Defendants merely ask for a stay until the panel issues its opinion and mandate. *Contra Ortega Trujillo*, 221 F.3d at 1264 (stay pending conclusion of trial in the Bahamas was "immoderate" when it would "expire only after a trial of the Bahamian case and the exhaustion of appeals in that case" and "the record indicate[d] that the Bahamian case [wa]s not progressing quickly"); *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1524 (11th Cir. 1984) (stay pending resolution of related state court action was "indefinite" when the state court action "ha[d] been pending for 18 months" and "a trial date [wa]s not yet scheduled").

A stay here would also be reasonable because it could avoid potentially costly and needless discovery or motions practice while imposing minimal burdens on Plaintiffs. *See Pierce*, 2014 WL 12528362, at *1. As Plaintiffs have noted, much of their complaint focuses on statistical data and will take mountains of documents and data to prove. Compl. ¶¶ 99–212. If the Eleventh Circuit were to affirm the Northern District's ruling in *Shen*, it would obviate most, if not all, of Plaintiffs' claims in this

case. In that event, a stay would avoid unnecessary expense to the parties from burdensome discovery requests. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) ("[A]ny legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible."). Conversely, if the Eleventh Circuit were to reverse in *Shen*, a stay would not prejudice Plaintiffs, because they would still be able to conduct discovery following the conclusion of *Shen*. Nor is there any indication that a brief stay would otherwise prejudice Plaintiffs, who unlike the plaintiffs in *Shen* have not sought preliminary injunctive relief premised on allegations of imminent irreparable harm.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the Northern District of Florida. In the alternative, it should stay the case pending the outcome of the Eleventh Circuit's opinion in *Shen*. In the interim, the Court should administratively stay the case pending the resolution of the motion to transfer the case to the Northern District.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel certifies that he has conferred with counsel for Plaintiffs, who oppose the relief sought by this motion. Counsel have also conferred with the state-attorney defendants, who do not oppose the motion.

Respectfully submitted,

ASHLEY MOODY
  *Attorney General*

HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*

DANIEL W. BELL (FBN 1008587)
  *Chief Deputy Solicitor General*

NATHAN A. FORRESTER (FBN 1045107)
  *Senior Deputy Solicitor General*

*/s/ Robert S. Schenck*
ROBERT S. SCHENCK (FBN 1044532)
  *Assistant Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
*henry.whitaker@myfloridalegal.com*
*daniel.bell@myfloridalegal.com*
*nathan.forrester@myfloridalegal.com*
*robert.schenck@myfloridalegal.com*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on June 13, 2024, to all counsel of record.

*/s/ Robert S. Schenck*
Assistant Solicitor General