## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC., et al., *Plaintiffs*, v. J. Alex KELLY, in his official capacity as Secretary of Commerce, et al., *Defendants*. | No. 1:24-cv-21749-DPG |

### STATE DEFENDANTS' SUPPLEMENTAL BRIEF

State Defendants respectfully submit this supplemental brief to explain how the Eleventh Circuit's recent ruling in *Shen v. Commissioner*, No. 23-12737, 2025 WL 3072937 (11th Cir. Nov. 4, 2025), bolsters their motion to dismiss.

Like the plaintiffs in *Shen*, Plaintiffs here challenge three elements of Florida's SB 264:

(1) the *purchase* restriction, which disallows sale of real estate to certain entities or individuals, including domiciliaries of seven foreign countries of concern, Fla. Stat. § 692.203(1), (2);

(2) the *registration* requirement, which obligated those who already held property that would otherwise be subject to the purchase requirement to register that property by the end of 2023, Fla. Stat. § 692.203(3)(a); and

(3) the *affidavit* requirement, which mandates that all purchasers of all properties in the State complete an affidavit swearing compliance with SB 264 at the time of purchase, Fla. Stat. § 692.203(6).

Plaintiffs arrange their challenges into four counts corresponding to four provisions of the Fair Housing Act (FHA). They allege that the three requirements of SB 264 discriminate, based on national origin, by (1) "mak[ing] unavailable or den[ying] a dwelling"; (2) "discriminat[ing] in the terms, conditions, or privileges of sale or rental of a 'dwelling'"; (3) "caus[ing]" a statement

1

indicating a "preference, limitation, or discrimination"; and (4) "interfer[ing] with . . . any right granted" by the FHA under Sections 3604 or 3605. Am. Compl. ¶¶ 287–308. Adding to the confusion, Plaintiffs allege discrimination in three different ways for those four counts: facially, in the requirements' intent, and in the requirements' effect.[1] At the hearing, Plaintiffs conceded that Count III was limited to SB 264's affidavit requirement, but argued that a unique standard applied to that discriminatory-statement claim.

In *Shen*, the plaintiffs—"four Chinese citizens and a real estate brokerage firm"—brought challenges to SB 264 under the FHA and Equal Protection Clause against the same State Defendants here. 2025 WL 3072937, at *1. The district court denied the plaintiffs' motion for a preliminary injunction barring enforcement of SB 264, and the Eleventh Circuit affirmed. *Id.* The Eleventh Circuit held that no plaintiff had standing to challenge the purchase restriction, *id.* at *3–8, and that the plaintiffs were unlikely to prove that the registration and affidavit requirements discriminated in violation of the Equal Protection Clause or the FHA, *id.* at *10–20. This ruling confirms that Jin Bian and King Realty lack standing to challenge the purchase restriction. It also

---

[1] As a result, Plaintiffs' amended complaint effectively alleges 36 different counts. It bears emphasis that the manner in which Plaintiffs arrange these counts makes analysis exceedingly difficult. Plaintiffs plead four counts but pack "various theories of liability" into each count without specifying which requirements (purchase, registration, or affidavit) they challenge under each theory. *Al Rushaid Petroleum Inv. v. Siemens Energy Inc.*, No. 23-13297, 2025 WL 3204360, at *8 (11th Cir. Nov. 17, 2025); *see also* Am. Compl. ¶¶ 287–308. The Eleventh Circuit has "repeatedly emphasized district courts' duty to define the issues at the earliest stages of litigation by ordering the repleading of a shotgun complaint." *Barmapov v. Amuial*, 986 F.3d 1321, 1328 (11th Cir. 2021) (Tjoflat, J., concurring) (quotation omitted); *see also, e.g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295–96 (11th Cir. 2018); Fed. R. Civ. P. 10(b) (requiring that each claim be "limited as far as practicable to a single set of circumstances"). "When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1296. That alone would warrant dismissal here, because Plaintiffs already had a chance to remedy this problem when filing their amended complaint, but it also warrants narrowing this case significantly. *See id.*

confirms that no Plaintiff is likely to succeed in showing that any requirement of SB 264 discriminates facially or in its intent.

## ARGUMENT

I. ***Shen* confirms that Jin Bian and King Realty lack standing to challenge SB 264's purchase restriction because they both lack an Article III injury.**

In *Shen*, the four individual plaintiffs held non-immigrant visas and stated that they were interested in buying homes in Florida. 2025 WL 3072937, at *4–8 (one plaintiff had a tourist visa and has since applied for asylum). Yet the Eleventh Circuit held that the individual plaintiffs fell outside the sweep of SB 264's purchase restriction, and thus lacked standing, because they were either domiciled in Florida or lacked specific plans to buy a home in Florida. *See id.* This ruling forecloses standing for Jin Bian and King Realty. The two advocacy organizations (HOPE and FHCGPB) and the other professional organization (AREAA) continue to lack standing for the reasons stated in State Defendants' motion to dismiss. *See* DE106 at 5–13; DE112 at 3–5.

**A. Bian.** Like the individual plaintiffs in *Shen*, Jin Bian is not "arguably domiciled" in any of the seven foreign countries of concern; by his own allegations, he is domiciled in Florida. *Shen*, 2025 WL 3072937, at *7. Bian, like two *Shen* plaintiffs (Liu and Shen), *id.* at *4, *7, is here on an H1-B visa and has lived in Florida "for years." *See* Am. Compl. ¶¶ 20, 268. Bian claims that his H-1B visa shows he is not domiciled in Florida, DE107 at 25–26 n.12, but *Shen* rejected this very theory, because "Florida law is clear that it is presence plus the intent to remain for an indefinite period or an unlimited time—and not federal immigration status—that controls one's domicile in the state." 2025 WL 3072937, at *8 n.1. Indeed, Bian's domicile in Florida is more established than Liu and Shen because Bian owns *two* houses, and is interested in purchasing a third. Am. Compl. ¶¶ 20, 272. That is more than enough to show "an intent to remain in the state indefinitely." *Shen*, 2025 WL 3072937, at *7.

In addition to not being "arguably domiciled" in any of the foreign countries of concern, the injury Bian alleges—inability to purchase a third home—is no more imminent than were the injuries alleged by the individual plaintiffs in *Shen*. Like the *Shen* plaintiffs, Bian "has no specific plans" to purchase a third home; he "only imagines [he] might want to do so in the future." *Id.* at *6. For these reasons, Bian lacks a sufficient Article III injury to challenge the purchase restriction in SB 264. *Id.*

**B. King Realty.** *Shen* also forecloses standing for King Realty. Like the real estate brokerage firm in *Shen*, *see id.* at *8, King Realty identifies one Chinese citizen who signed a real estate contract before July 1, 2023, and then allegedly could not complete the sale because of the purchase restriction in SB 264. Am. Compl ¶ 263. But because the equitable title for that property was transferred to the buyer when he signed the real estate contract, "the purchase restriction d[id] not limit his ability to complete the transaction." *Shen*, 2025 WL 3072937, at *8. As a result, King Realty could not have suffered an Article III injury from any potential enforcement of SB 264 against this particular lost sale.

Also like the real estate brokerage firm in *Shen*, King Realty alleges that it lost business with unnamed "Chinese buyers" due to SB 264. Am. Compl. ¶ 264. But King Realty never alleges that these "individuals" are domiciled in China, so "there's no indication that the purchase restriction applie[d] to them or their properties." *Shen*, 2025 WL 3072937, at *8. Here too, King Realty has suffered no Article III injury from the potential enforcement of SB 264.

**II.   The Eleventh Circuit's opinion forecloses Plaintiffs' theories of discrimination.**

Plaintiffs advance three theories of discrimination—facial, intent-based, and disparate impact—in their complaint. *Shen* forecloses the first two theories, and the disparate impact theory fails for other reasons. *See* DE106 at 22–26; DE112 at 9–10.

4

### A. *Shen* confirms that SB 264 does not facially discriminate based on national origin.

In *Shen*, the Eleventh Circuit held that SB 264's registration and affidavit requirements do not "facially classif[y] based on national origin." *Shen*, 2025 WL 3072937, at *11. While *Shen* did not address the purchase restriction directly (since no plaintiff had standing to challenge it), the registration requirement and the purchase restriction each have the same scope of coverage, meaning that the purchase restriction does not discriminate facially either. *See id.* at *1–2; Fla. Stat. §§ 692.203(1)(a), 692.203(3)(a), 692.201(4). And *Shen* was clear that the affidavit requirement did not discriminate facially, as it "doesn't distinguish at all: everyone who buys Florida property has to submit the same affidavit." *Shen*, 2025 WL 3072937, at *11.

Plaintiffs' proxy claim—the idea that a distinction based on domicile is tantamount to a distinction based on national origin—also fails under *Shen*. *Shen* starts by questioning whether a proxy claim is even viable under the FHA. *See id.* ("Even assuming a facial classification can be proven by proxy . . . ."). Even assuming that it is, *Shen* still forecloses such a claim. In *Shen*, the Eleventh Circuit rejected the proxy discrimination claim because the plaintiffs there failed to show a "sufficient 'fit' between Chinese domicile and Chinese national origin." *Id*. Even though *Shen* applied an abuse of discretion standard in reviewing the denial of a preliminary injunction, Plaintiffs' proxy discrimination claim suffers from the same defect at the pleading stage. Plaintiffs allege no concrete facts showing a "fit" between Chinese domicile and Chinese national origin. At best, Plaintiffs chain together assumptions about population sizes, residency, and domicile through "information and belief" pleading. *See* Am. Compl. ¶ 112 ("On information and belief, nearly all persons residing in China are 'domiciled' there."). This is not enough. *See Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and

5

allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009), *abrogated on other grounds by, Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

Like the statistics produced by the plaintiffs in *Shen*, the statistical allegations made by Plaintiffs here are deficient because they "appear to show only that many people of Chinese national origin also live in China." *Shen*, 2025 WL 3072937, at *11 n.4. "Domicile is not necessarily synonymous with residence, and one can reside in one place but be domiciled in another." *Id.* (cleaned up). An allegation that "most people who live in China were also born there" would thus fail to show the necessary "fit between Chinese domicile and Chinese national origin." *Id.* Without concrete figures to address that deficiency, Plaintiffs cannot plausibly allege a proxy discrimination claim.

Plaintiffs avoid Defendants' arguments about domicile, now affirmed in *Shen*, by fashioning the erroneous theory that SB 264 separately applies to all Chinese citizens. DE107 at 16–17. In fact, they have disclaimed *any narrower theory* of facial discrimination. *See id.* ("Plaintiffs' facial discrimination allegations . . . do not relate to the domicile provisions at all."). But SB 264 does not turn on citizenship. DE112 at 1–2. Even if it did, the FHA does not prevent discrimination based on citizenship, *see* 42 U.S.C. § 3604(a)–(c), and neither citizenship nor alienage is synonymous with race or national origin. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973). Any theory that citizenship is a proxy for national origin would thus be defeated by the same lack of statistical evidence showing fit between those characteristics. *See supra* Part II.A.

**B.**     ***Shen* eviscerates any theory that SB 264 intentionally discriminates on the basis of national origin under *Arlington Heights*.**

Plaintiffs next claim that SB 264 intentionally discriminates based on national origin, in violation of the FHA. Such a claim requires analysis under the same *Arlington Heights* factors

6

used to assess equal-protection claims. *See Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1281 (11th Cir. 2022) (using *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), in an intentional discrimination case under the FHA); *Hallmark Devs., Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1286 (11th Cir. 2006) (same). After considering a virtually identical set of facts concerning the legislative history, historical context, and impact of SB 264, *Shen* concluded that the plaintiffs were unlikely to succeed in proving that SB 264 intentionally discriminated on the basis of national origin. 2025 WL 3072937, at *16–19; *see also id.* at *20 (rejecting FHA claim alongside equal protection claim). If the plaintiffs in *Shen* were unlikely to succeed under *Arlington Heights*, Plaintiffs here cannot survive a motion to dismiss simply by alleging materially identical facts. *Compare generally* Emergency Mot. for Preliminary Injunction, *Shen v. Simpson*, No. 4:23-cv-208 (S.D. Fla. June 6, 2023), ECF No. 21 (motion and declaration by Keliang Zhu), *with* Am. Compl. ¶¶ 4, 61–71 (drawing from most, if not all, of the *Shen* exhibits or the sources cited therein); DE107 at 17–23.

**1. Legislative History.** *Shen* rejected Plaintiffs' view of the legislative history surrounding SB 264 and concluded that "national, individual, land, and food security concerns motivated SB 264's enactment," not animus against people of certain national origins. *Shen*, 2025 WL 3072937, at *18. Plaintiffs cannot plausibly allege intentional discrimination when the Eleventh Circuit concluded that none of the statements in the legislative history "show[ed] any animus toward . . . those of Chinese national origin." *Id.*

**2. Foreseeable disparate impact.** Plaintiffs fail to plausibly allege sufficient facts to show a foreseeable disparate impact because they fail to allege the quantity and location of individuals domiciled in China that SB 264 would reach without extraterritorial application. *See supra*

7

Part II.A.[2] The plaintiffs in *Shen* made a similar error, and Plaintiffs repeat it here. *See Shen*, 2025 WL 3072937, at *18. Even if Plaintiffs had alleged concrete facts concerning domicile, the mere application of SB 264 to people domiciled in China "doesn't tell us the likelihood the provisions will have a foreseeable impact on . . . those of Chinese national origin." *Id.*[3]

**3. Less discriminatory alternatives.** As an additional factor in the *Arlington Heights* analysis, Plaintiffs suggest that the Florida legislature could have addressed its legitimate concerns about foreign threats to Florida's infrastructure and information security through less discriminatory alternatives. But *Shen* directly rejected the lead alternative that Plaintiffs offer in this case. *Compare id.* at *19 (that the "Florida Legislature easily could have limited the law to foreign powers and their agents" does not show discriminatory intent (quotation omitted)), *with* Am. Compl. ¶ 85 (proposing the same alternative). If Plaintiffs' other proposed tweaks to SB 264 even qualify as alternatives (they do not), "the fact that the Legislature did not include the alternative options that the plaintiffs would have preferred is not evidence of discriminatory intent." *Shen*, 2025 WL 3072937, at *19 (cleaned up).

## CONCLUSION

In sum, Shen only scaffolds the conclusion that the Court should dismiss Plaintiffs' amended complaint, in whole or in part. Even if the Court disagrees with everything else in State

---

[2] *Shen* undermines Plaintiffs' use of global residence data to support their disparate impact theories because SB 264 does not apply extraterritorially and the "appropriate inquiry is into the impact on the total group to which a policy or decision applies." *Shen*, 2025 WL 3072937, at *17 (quoting *Hallmark*, 466 F.3d at 1286); *see also* DE106 at 22–26.

[3] This discrediting of disparate impact as a factor in the *Arlington Heights* analysis also throws cold water on Plaintiffs' attempt to use disparate impact as an independent basis for claiming discrimination in violation of the FHA. *See id.* at *17–18 (noting that the *Shen* plaintiffs claimed a "disparate impact on Asian people and those of national origin" in violation of the FHA and affirming the district court's conclusion that those claims were unlikely to succeed). If the plaintiffs in *Shen* could not establish disparate impact as a factor under *Arlington Heights*, then it makes little sense for Plaintiffs here to show a stand-alone disparate impact claim.

Defendants' motion to dismiss, *Shen* requires dismissal of Jin Bian's and King Realty's claims against SB 264's purchase provision. *Shen* also squarely forecloses all but four claims in Plaintiffs' complaint: the claims that the purchase restriction has a disparate impact on people of Chinese national origin in Counts I, II, and IV; and the claim in Count III that the universally applicable affidavit requirement to swear compliance with SB 264 creates discriminatory statements. As to these remaining four claims, *Shen*'s discrediting of disparate impact as a factor in the *Arlington Heights* analysis, coupled with its rejection of disparate impact as a basis for liability under 42 U.S.C. § 3604(a), *see id.* at *20, casts serious doubt on whether Plaintiffs may use disparate impact as an independent theory of discrimination under any provision of the FHA. *See id.* at *20.

Respectfully submitted November 26, 2025

JAMES UTHMEIER
  *Attorney General*

  */s/ Robert S. Schenck*
JEFFREY P. DESOUSA (FBN 110951)
  *Acting Solicitor General*
NATHAN A. FORRESTER (FBN 1045107)
  *Chief Deputy Solicitor General*
ROBERT S. SCHENCK (FBN 1044532)
  *Deputy Solicitor General*
CASEY J. WITTE (FBN 1070288)
  *Solicitor General Fellow*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
robert.schenck@myfloridalegal.com

*Counsel for State Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2025, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

  */s/ Robert S. Schenck*
Deputy Solicitor General